It's not, you know, something that there's a big sign up about. Although, indeed, the District Attorney says there almost was a sign here. But he says that the defendant came in shouting what his intention was, or at least his hope. Intention is a subjective matter. You judge it the same as you do in life, generally. You judge it from surrounding circumstances, from what a man does. If I were to shoot a gun at someone, you are to have a right to infer that I had some intention, probably not a friendly one. And so the same here. If I were to shoot a gun at someone and hit him, it's very likely that I would hurt him or kill him. And that is a natural and probable consequence of such an act. And because it is, it is a matter of common sense if you intentionally do something, the natural and probable consequence of which is a certain effect, well, that's probably what you intended, that is probably the effect you intended. If I were to hold a gun to someone's head and shoot at his head, it would probably kill him. And you would be quite justified in inferring that that is just exactly what I intended. A person is presumed to intend the natural and probable consequences of his conduct." The example did not differ greatly from the facts of the case. There was ample evidence of the fact that the victim was shot in the abdomen, and the jury was well aware of the location of the wound. Quite often the trial court will give an example in its charge to highlight and illustrate the meaning of certain aspects of the charge. "The trial judge should not as a rule limit himself [to stating the law]. Jurors need not legal definitions merely. They require proper instructions as to the method of analyzing such definitions after reaching their conclusions on the facts." (People v Odell, 230 NY 481, 488.) It would appear then that the Court of Appeals has given us a clear mandate to avoid the sterile, and an example is one method of aiding this analysis; an example, that must necessarily avoid the precise facts in the case while at the same time having some relationship. A fair reading of the court's charge does not lead one to the belief that the trial court directed or intended to direct a verdict. It would not be at all wise to sustain every challenge to an example given in a charge when it is clearly either a *reductio ad absurdum* or an exaggeration. I cannot, therefore, find that such an example was sufficient to usurp the jury's function or otherwise tread upon their prerogatives, or that it was prejudicial to the defendant. At various points in his charge the court was careful to review for the jury the defendant's evidence as well as the People's evidence, particularly referring to Shaw's possible intoxication and his irrational behavior. The court also referred to the defendant's evidence on the issue of intent as follows: "The defendant has taken the stand here and has given his version of the facts. And he doesn't dispute that he had a loaded gun. He says that he was showing it to another man in Clarke's Pool Room when somebody jogged him or grabbed him and the gun went off. *He says that he had no intention to hurt anybody and that he had no intention to hurt or kill Harry Weathers.* Indeed, implicit in Mr. Shaw's testimony is that he had nothing against Harry Weathers". It does not appear then that the charge impinged upon the jury's freedom of decision or compelled a finding that the shooting was an intentional act (see *People v Hommel,* 41 NY2d 427). The judgment should be affirmed.

■ CHARLIE L. MOORE, Appellant, v LEASEWAY TRANSPORTATION CORP. et al., Respondents.—Judgment, Supreme Court, Bronx County, entered May 26, 1977, in favor of defendants, affirmed, without costs or disbursements. Although no offer of proof was allowed at trial it is clear that plaintiff wished to testify about statements made by the deceased driver, Jenkins, concerning his right to take a passenger or helper, *ad hoc,* with him. The